```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Susan Micciche,                                        :
                                                       :
                    Plaintiff,                         :         **MEMORANDUM AND ORDER**
                                                       :
            -against-                                  :         06-CV-5099 (DLI) (SMG)
                                                       :
Kemper National Services,                              :
                                                       :
                    Defendant.                         :
-------------------------------------------------------x
```
**DORA L. IRIZARRY, U.S. District Judge:**

On September 21, 2006, plaintiff Susan Micciche sued defendant Kemper National Services ("Kemper") under the Employee Retirement Income Security Act ("ERISA"), alleging that defendant, as administrator of her employer-sponsored insurance plan (the "HSBC plan"), improperly denied her claim for long-term disability benefits. Plaintiff seeks the value of the benefits she believes are owed to her under the HSBC plan. Kemper moves the court to dismiss the complaint pursuant to Rules 4(m) and 12(b)(5) of the Federal Rules of Civil Procedure because plaintiff failed to serve Kemper with the summons and complaint within 120 days after it was filed, or alternatively, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the present action is time-barred by the terms of the HSBC plan. For the reasons set forth below, the court excuses plaintiff's failure to comply with Rule 4(m)'s service requirements, and dismisses plaintiff's complaint pursuant to Rule 12(b)(6).

**I.      Background**

      A.      Facts

Plaintiff worked as a Branch Platform Officer for HSBC Bank USA, and received disability insurance coverage under the HSBC plan. (Compl. ¶ 6; Attachment to Complaint (hereinafter, "O'Rourke Letter") at 1-2) In February of 2000, an accident rendered plaintiff

unable to work and she took disability leave. (Comp. ¶ 7; O'Rourke Letter at 2-3) Plaintiff briefly returned to work from August 17, 2000 until September 14, 2000 but has not worked since because her disability "has [ ] prevented [her] from engaging in any occupation or from performing any work for compensation or profit." (Compl. ¶¶ 7, 16) Plaintiff asserts in her complaint that she has been totally disabled since 2001, and has received social security disability benefits, in addition to short-term disability benefits under the HSBC plan. (Compl. ¶¶ 8, 16) Plaintiff's application for long-term disability benefits under the HSBC plan was denied. (*See* O'Rourke Letter at 1)

Plaintiff, through counsel, made several unsuccessful attempts to appeal the denial of her claim. (*Id.*) Plaintiff attached to her complaint a letter dated October 3, 2001 from the claims administrator that preceded Kemper—Integrated Disability Resources, Inc. ("IDR")—to plaintiff's counsel, Mr. Thomas Bello, which reads, "We are writing to you concerning your appeal of the denial decision on your client's application for Long Term Disability benefits under the above employer's policy. We have completed our review of your appeal and we must uphold the previous denial decision on your client's claim." (O'Rourke Letter at 1) The letter concludes with the following language:

> Since this is the third appeal and we still have not been provided with medical evidence to support a disability for the period of time for which the claim is being filed, this is our final decision on the claim. We will not consider for review any medical information submitted that is already in the file and is not supportive of a Disability that began at the start of the policy's Benefit Qualifying period.

(*Id*. at 3)

On November 4, 2002, more than a year after the denial of plaintiff's third appeal, Mr. Bello sent IDR a letter, attempting to submit additional medical documentation and requesting that the administrator contact him to discuss plaintiff's benefits claim. (ECF Docket Entry 26,

2

Ex. D at 25) A subsequent letter to IDR from Mr. Bello dated April 2, 2003 states, "On November 4, 2002 this firm forwarded correspondence to you regarding [plaintiff]. To date we have not received a response. Kindly contact this office at your earliest convenience." (*Id.* at 27) On April 7, 2003, IDR wrote a response to Mr. Bello, which states:

> We are writing to you concerning your client's Long Term Disability claim under [HSBC]'s policy.
>
> We wish to acknowledge receipt of your letter dated April 2, 2003 in which you indicated information was forwarded to us concerning [plaintiff]'s claim.
>
> Please note that [Kemper], the claim administrator for the Long Term Disability (LTD) Plan, has transitioned claims administration from IDR Inc.'s Connecticut office to Kemper's Florida claims center. The transition to the Florida office took place effective December 1, 2002. Therefore, your client's claim has been transferred to the Florida office for ongoing claims administration.
>
> The Kemper Disability Claims Unit, located in Plantation, Florida, has a fully staffed team of professionals dedicated to coordination your disability needs.
>
> If you have any questions concerning your client's claim, you may contact Kemper at the address and telephone number listed below:

(ECF Docket Entry 27, Ex. D at 39-40) The letter also includes Kemper's general address and toll free number. (*Id.* at 39-40)

On March 5, 2004, Mr. Bello sent another letter to IDR, renewing his request that IDR contact him and resubmitting the medical documentation originally sent with his November 4, 2002 letter. (*Id.* at 29, 33) On April 20, 2004, Mr. Bello also sent a letter to Kemper, asking it to contact him regarding the status of plaintiff's claim and forwarding copies of correspondence between IDR and his office. (*Id.* at 30.) There is no indication that either IDR or Kemper ever replied to these communications. A letter from Mr. Bello to Kemper dated September 8, 2004 and addressed "To Whom It May Concern," states, "As per our conversation please forward a copy of [plaintiff's] file to the undersigned at your earliest convenience." (*Id.* at 32)

3

B.      Procedural History

On September 21, 2006, plaintiff filed the present complaint, alleging that Kemper wrongly denied her the benefits that she was entitled to under the HSBC plan. Plaintiff seeks, "[j]udgment in the amount of the calculated benefit rate from January, 2001 to the present and continuing to the future, plus interest." (Compl. ¶ A)[1] Service of the summons and complaint on the defendant was due within 120 days of the filing of the complaint, or, no later than January 19, 2007. *See* Fed. R. Civ. P. 4(m). Defendant was not served until March 13, 2007—173 days after the filing of the complaint. (*See* ECF Docket Entry 26 at 2) On April 20, 2007, Kemper moved to dismiss the complaint pursuant to Rules 4(m), 12(b)(5), and 12(b)(6).

## II.     Discussion

Plaintiff asserts in her complaint that she is fully disabled and that Kemper has wrongly denied her the disability benefits to which she is entitled under the HSBC plan. Kemper argues that the complaint should be dismissed with prejudice pursuant to Rules 12(b)(5) and 4(m) because plaintiff failed to timely serve the summons and complaint within the prescribed 120-day period, or alternatively, pursuant to Rule 12(b)(6) because plaintiff has failed to state a claim upon which relief can be granted.

A.      Kemper's Motion under Rules 12(b)(5) and 4(m)

Kemper first argues that plaintiff's complaint should be dismissed for insufficient process pursuant to Rule 12(b)(5) because plaintiff did not serve defendant with a summons and complaint within 120 days of filing the complaint with the court, as required by Rule 4(m). *See* Fed. R. Civ. P. 4(m), 12(b)(5). Rule 4(m) states:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the

---

[1] Originally, plaintiff also sought punitive and consequential damages, (Compl. ¶¶ B, C), but those claims have since been withdrawn, (ECF Docket Entry 27 at 2).

4

> action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Although earlier versions of the rule mandated dismissal unless a plaintiff could demonstrate good cause for failing to timely serve the defendant, the current rule—as amended in 1993[2]—provides district courts with the discretion "to enlarge the 120-day period 'even if there is no good cause shown.'" *Henderson v. United States*, 517 U.S. 654, 662-663 (1996) (quoting Fed. R. Civ. P. 4(m) Adv. Comm. Notes).

Despite the 1993 amendment, as recently as 2006, the Second Circuit was reluctant to adopt a reading of Rule 4(m) that deviated from the traditional view that a complaint not timely served must be dismissed absent a showing of good cause. *See Bogle-Assegai v. Connecticut*, 470 F.3d 498, 508 (2d Cir. 2006) (plaintiff's suggestion "that she was not required to show good cause in order to be given an extension of time to make proper service . . . is unsupported by any authority of this Court."). In *Zapata v. City of New York*, however, the Circuit clarified that its earlier observation about Rule 4(m) "was linked to the factual context of that case," and did not represent a categorical holding "that good cause is required in every case for an extension of the service period under Rule 4(m)" because such an interpretation "would be inconsistent with the wording of the rule and the views of the Supreme Court." 502 F.3d 192, 196 (2d Cir. 2007). Accordingly, the court held "that district courts have discretion to grant extensions even in the absence of good cause." *Id.*; *see also Beauvoir v. United States Secret Service*, 234 F.R.D. 55, 57-58 (E.D.N.Y. 2006) ("In light of *Henderson*, the view that dismissal under Rule 4(m) is mandatory—even if it remains the majority view in this Circuit—is no longer valid."). Thus,

---

[2] The language of Rule 4 was further amended on December 1, 2007, but "[t]hese changes [were] intended to be stylistic only." Fed. R. Civ. P. 4 Adv. Comm. Notes.

5

even if plaintiff is unable to show good cause for failing to serve Kemper within the 120-day period, the court still may consider granting a discretionary extension.

### *1. Extension for Good Cause*

Courts consider two factors in determining whether good cause, i.e., excusable neglect, for failing to comply with Rule 4(m)'s time limit has been shown: "(1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay." *Lab Crafters, Inc. v. Flow Safe, Inc*. 233 F.R.D. 282, 284 (E.D.N.Y. 2005) (citing *Blessinger v. United States*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997)). Courts generally will find good cause only where the failure to effect timely service was the result of circumstances beyond plaintiff's control, and was not the result of mere "inadvertence, neglect, mistake or misplaced reliance." *Beauvoir*, 234 F.R.D. at 56 (citations omitted); *see also Zankel v. United States*, 921 F.2d 432, 436 (2d. Cir. 1990) ("[A] judge is certainly not required to treat inadvertence . . . as 'good cause' or 'excusable neglect' for delay in service.") (collecting authorities). Moreover, courts have found that a plaintiff's duty to effectuate timely service is not satisfied simply by relying on a process server. *Beauvoir*, 234 F.R.D. at 57.

Service of the summons and complaint was due on Kemper on or before January 19, 2007, but was not effectuated until March 13, 2007, fifty-three days past the 120-day deadline. Plaintiff acknowledges that service was untimely, but asks that this defect be excused. Plaintiff's counsel, Mr. Bello, attempts to establish excusable neglect by citing "numerous problems with the process server" and "absence of the full time paralegal who was out on maternity leave," which purportedly left the office "severely understaffed" and unable to perform "normal follow up procedures." (ECF Docket Entry 27 at 2) Circumstances such as these fail to establish excusable neglect. *See, e.g.*, *Hertzner v. United States Postal Service*, No. 05-CV-2371, 2007

WL 869585 at *8 (E.D.N.Y. March 20, 2007) (counsel's duty to inquire into the status of service not affected by his vacation plans or "[t]he fact that [he] was actively engaged in litigation of other cases"). Mr. Bello must have anticipated that his full-time paralegal would be taking maternity leave, and he should have made the requisite preparations to fulfill his responsibilities to his clients and the court. Regardless of the availability of counsel's staff, it remained his "responsibility to monitor the activity of the process server and to take reasonable steps to assure that [the] defendant is timely served." *Beauvoir*, 234 F.R.D. at 57 (citation omitted). In this case, rather than explain the steps he took to monitor the process server, counsel concedes that the "normal follow up procedures" were not performed. Under these circumstances, plaintiff cannot be considered to have made reasonable and diligent efforts to timely serve defendant.

Moreover, plaintiff's reliance on *Armstrong v. Sears* is entirely misplaced. In *Armstrong*, the Second Circuit overturned the district court's Rule 4(m) dismissal where a *pro se* plaintiff, relying on the United States Marshals Service to effect service on several federal agents, failed to ensure that service actually was made. 33 F.3d 182, 188 (2d Cir. 1994). In contrast, plaintiff's counsel is a member of the bar and admitted to practice before this court. When representing a client in this or any other court, he is responsible for complying with the applicable procedural rules. *See*, *e.g.*, N.Y. Code of Prof'l Responsibility EC 6-1[3] ("Having undertaken representation, a lawyer should take proper care to safeguard the interests of the client."). Plaintiff shirked this responsibility, and has failed to establish good cause for so doing. Nevertheless, the court will review the relevant factors to determine whether a discretionary extension is appropriate.

---

[3] The New York Code of Professional Responsibility is published at Part 1200 of Title 22 of the New York Codes, Rules and Regulations.

## 2. Discretionary Extension

As noted above, "a district court *may* grant an extension in the absence of good cause, but it is not required to do so." *Zapata*, 502 F.3d at 197 (emphasis in original). The four factors to be considered in determining whether to grant a discretionary extension of the service deadline are: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Beauvoir*, 234 F.R.D. at 58. (quoting *Carroll v. Certified Moving & Storage Co., LLC*, No. 04-CV-4446, 2005 WL 1711184 at *2 (E.D.N.Y. July 19, 2005)). In the present case, Kemper argues that plaintiff's action was time-barred from the moment it was filed. As service was eventually made on Kemper, it was apprised of plaintiff's claim and has had an opportunity to brief the issues. Nothing indicates that Kemper attempted to conceal the defect in service, but neither is there any indication that Kemper would suffer any prejudice if the court excused plaintiff's defective service. These factors, combined with the court's reticence to punish plaintiff for her counsel's mistakes, lead the court to excuse plaintiff's tardy service. Accordingly, the court will consider whether plaintiff has stated a claim for which relief can be granted.

### B. Kemper's Motion under Rule 12(b)(6)

#### 1. Standards on a Rule 12(b)(6) Motion

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may make a motion, in lieu of an answer, to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all reasonable

inferences in the plaintiff's favor. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court retired the standard set forth half a century ago in *Conley v. Gibson*, that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of the requirement that plaintiff plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. 1955, 1968-69, 1974 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). Pursuant to *Bell Atlantic*, in order to be facially plausible, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic*, 127 S. Ct. at 1964-65 (citations omitted). The Second Circuit has interpreted the foregoing language to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*," rather than to mandate a "universal standard of heightened fact pleading." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

When material outside the complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the purposes of this rule, however, the complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); Fed. R. Civ. P. 10(c). A document is "integral" to the complaint where "the complaint relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153 (citations omitted). "A plaintiff's *reliance* on the terms and

9

effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id*. (emphasis in original).

Plaintiffs are harmed when material outside the complaint is considered on a motion to dismiss because they lack notice that such consideration is taking place. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). Rule 12(d)'s conversion requirement remedies this problem by "deter[ring] trial courts from engaging in fact finding when ruling on a motion to dismiss and ensur[ing] that when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it." *Id*. Accordingly, where there is actual notice by the opposing party of all the information in the movant's papers, the necessity to convert a motion to dismiss to one for summary judgment is largely dissipated. *Chambers*, 282 F.3d at 153.

In the present case, several documents have been presented for the court's consideration in connection with Kemper's 12(b)(6) motion: plaintiff attached the October 3, 2001 letter from IDR to the complaint itself, Kemper submitted a copy of the HSBC plan along with their motion to dismiss, and plaintiff submitted a number of letters between her lawyer, Kemper, and IDR in connection with plaintiff's disability claim. The court finds that all of these documents may be considered without converting Kemper's dismissal motion into a Rule 56 motion for summary judgment. The October 3, 2001 letter plainly is attached to the complaint, and the HSBC plan is necessarily referenced by the complaint because the complaint seeks disability benefits under the plan. Additionally, the court finds that the correspondence between plaintiff's counsel, IDR, and Kemper is integral to the complaint because, as explained more fully below, such

correspondence represents plaintiff's only attempt to satisfy the applicable limitations period. *See Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 565 (2d Cir. 2006) ("In reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider [documents not] attached to the complaint, because . . . plaintiffs rely on these documents to satisfy the [statutory] time limit requirements."). Moreover, as plaintiff herself submitted the correspondence at issue to the court, its consideration poses no prejudicial threat.

### 2. *The Applicable Statute of Limitations*

Plaintiff's final appeal was formally denied on October 3, 2001, and her complaint was not filed until September 21, 2006. Kemper argues that a three-year statute of limitations governs plaintiff's ERISA claim, and, as such, is time-barred. Plaintiff disagrees, contending that a six-year statute of limitations applies, and, accordingly, the claim was timely filed. Section 502(a)(1)(B) of ERISA, "confers upon employee plan beneficiaries a federal right of action to recover benefits due under their plan." *Smith v. First UNUM Life Ins. Co.*, No 98-CV-2415, 1999 WL 369958 at *3 (E.D.N.Y. June 2, 1999) (citing 29 U.S.C. §1132(a)(1)(B)). ERISA does not provide a specific statute of limitations for actions brought under this section, so "the controlling limitations period is that specified in the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 483-84 (1980)).

The Second Circuit has held that the most closely analogous state limitations statute applicable to ERISA benefits claims is the six-year limitations period prescribed by section 213 of New York's Civil Practice Law and Rules ("CPLR") for breach of contract actions. *Id*. at 598. Section 201 of the CPLR, however, "allows contracting parties to shorten a statutory period

of limitations if that period is contained in a written agreement between the parties." *Patterson-Priori v. Unum Life Ins. Co. of America*, 846 F. Supp. 1102, 1105 n.5 (E.D.N.Y. 1994). As another court in this district has noted, "[i]t is well-settled in this circuit" that section 201 applies to employee benefit plans governed by ERISA, and that, accordingly, "[w]here a benefit plan specifies a limitations period shorter than six years . . . the contractual period governs." *Smith*, 1999 WL 369958 at *3; *see also Yuhas v. Provident Life and Cas. Ins. Co.*, 162 F. Supp. 2d 227, 231 (S.D.N.Y. 2001) ("[W]hen a written agreement between the parties, such as an insurance policy, stipulates a shorter limitations period, the shorter period governs."). In this case, plaintiff's insurance plan includes the following clause:

> **Legal Action**
> You or your authorized representative may not start a legal action:
> **1.** Until 60 days after proof your claim has been given; or
> **2.** More than three years after the date when proof of your claim was required.

(ECF Docket Entry 13 at 23). This contractual clause represents a written agreement between the parties to shorten the statutory period of limitations, thus, it is controlling.

### 3. Accrual of Plaintiff's ERISA Claim for Benefits

Although district courts look to state law to determine the correct statute of limitations for ERISA benefits claims, federal law governs as to when that statute of limitations begins to run. *Lewis v. John Hancock Mutual Life Ins. Co.*, 6 F. Supp. 2d 244, 247 (S.D.N.Y. 1998). Kemper argues that plaintiff's claim accrued, pursuant to the HSBC plan, on August 9, 2000 when proof of her claim was required. It is well established in this circuit, however, that an ERISA cause of action accrues, and the statute of limitations begins to run, "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." *See Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan*, 902 F.2d 1069, 1073 (2d Cir. 1990) (quoting *Miles*, 698 F.2d at 598). This accrual calculus "applies even when a benefit plan prescribes a different

accrual date, such as when the proof of loss is required to be furnished, because to hold otherwise would allow an insurer to simply bury a denial of coverage and wait for the statute of limitations to run." *Flood v. Guardian Life Ins. Co.,* No. 05-CV-5480, 2008 WL 199458 at *6 (E.D.N.Y. Jan. 22, 2008) (internal quotations marks and citations omitted); *see also Patterson-Priori*, 846 F. Supp. at 1106-1008 (disregarding the accrual date provided in the plan and, pursuant to *Miles*, determining that action accrued on date fiduciary denied plaintiff's application for benefits). Thus, plaintiff's claim accrued, and the three-year statute of limitations period began to run, when Kemper clearly and unequivocally denied her application. *See Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 43 F. Supp. 2d 303, 306-07 (E.D.N.Y. 1999).

The October 3, 2001 letter states, "[s]ince this is the third appeal and we still have not been provided with medical evidence to support a disability for the period of time for which the claim is being filed, this is our final decision on the claim." (O'Rourke Letter at 3.) This was a clear and unequivocal statement that plaintiff's claim was no longer being considered as of October 3, 2001. Plaintiff nevertheless argues that her action is timely even under a three-year statute of limitations because Kemper was continued to review her claims as recently as 2004. Plaintiff points to the letters exchanged between Mr. Bello and IDR and Kemper as "ample evidence" that, subsequent to the October 3, 2001 letter from IDR, her claim was still being considered and had not yet accrued,[4] These letters, however, show only that Mr. Bello made numerous attempts to reopen the issue by periodically requesting additional consideration of plaintiff's claim. Most of the letters are from Mr. Bello to Kemper or IDR and appear to have

---

[4] Some disagreement exists among district courts in this Circuit as to whether a cause of action accrues when benefits are first denied, or when administrative remedies have been exhausted. *See Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 325 (2d Cir. 2004). For present purposes, the court adopts the more lenient approach and assumes that plaintiff's claim did not accrue until her administrative remedies had been exhausted.

been left unanswered; only one is a reply from Kemper, acknowledging receipt of Mr. Bello's letter dated April 2, 2003, "in which [Mr. Bello] indicated information was forwarded to [Kemper] concerning plaintiff's claim." (*Id.* at 39-40)  Apart from this brief acknowledgment, the letter appears to be merely a form letter informing Mr. Bello that the administration of all HSBC plan claims were being handled by Kemper's Disability Claims Unit in Florida, rather than by IDR in Connecticut.  (*Id.*)  Additionally, Mr. Bello's letter dated September 8, 2004, indicates only that a conversation took place and that Mr. Bello had requested a copy of plaintiff's file, nothing more.  (*Id.* at 32.)

The court finds that these communications did not toll the contractual limitations period. Plaintiff "cannot continue extending the accrual date merely by requesting repeated reconsideration from the plan administrator or the insurer." *Mitchell v. Shearson Lehman Bros., Inc.*, No. 97-CIV-0526, 1997 WL 277381 at *6 (S.D.N.Y. May 27, 1997).  Even if Kemper had agreed to consider additional evidence submitted by plaintiff, "an offer by an insurance company to review additional information subsequent to a clear and unequivocal repudiation of benefits does not formally re-open a plaintiff's claim and toll the limitations period." *Allwood v. Frontier Commc'ns of Rochester Telephone, Inc*., 03-CV-6229, 2004 WL 2202572 at *3 (W.D.N.Y. Sept. 30 2004).  "A tenacious plaintiff should not be allowed to renew stale claims merely by requesting consideration of final decisions. . . . If a Court were to rule that an applicant's cause of action is renewed each time [an insurance company] informally re-examines [her insurance] request, [insurance companies] would simply refrain from doing so.  *Id*. (quoting *Patterson-Priori*, 846 F. Supp. at 1106).  None of the letters exchanged between Mr. Bello and IDR and/or Kemper, individually or in the aggregate, support plaintiff's assertion that her claim was formally reopened in 2004.  Therefore, plaintiff's ERISA claim accrued on October 3, 2001, and

the three-year statute of limitations expired on October 3, 2004. As such plaintiff's claim, was time-barred in 2006 when she filed the instant complaint.

**III.    Conclusion**

For the reasons stated above, plaintiff's complaint is dismissed pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

SO ORDERED.

DATED:    Brooklyn, New York
          March 24, 2008

_____/s/_____
DORA L. IRIZARRY
United States District Judge